**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RAYMOND D. YOWELL, | ) |
| Plaintiff, | ) |
| v. | ) 3:11-cv-518-RCJ-VPC |
| ROBERT ABBEY et al., | ) **ORDER** |
| Defendants. | ) |
| _____ | ) |

Currently before the Court are Defendants Robert Abbey, Helen Hankins, and the Department of the Treasury-Financial Management Services' Motion to Dismiss (#4); Defendant Jim Pitts's Motion to Dismiss (#6); Defendant The CBE Group, Inc.'s Motion to Dismiss (#11); Defendants Jim Connelley and Dennis Journigan's Motion for Summary Judgment (#17); and Plaintiff's Motion for an Englargement of Time (#19). The Court heard oral argument on February 21, 2012.

**BACKGROUND**

On July 20, 2011, *pro se* Plaintiff Raymond D. Yowell ("Plaintiff") filed a civil rights complaint pursuant to 42 U.S.C. § 1983, 25 U.S.C. § 478, and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in this Court. (Compl. (#1) at 1). In the complaint, Plaintiff sued Robert Abbey[1], Helen

---

[1] Abbey is currently the National Director of the Bureau of Land Management ("BLM"), but was the Nevada State Director of BLM in 2002. (Mot. to Dismiss (#4) at 3).

Hankins[2], Department of the Treasury Financial Management Services ("Treasury-FMS")[3], Allied Interstate Inc., Pioneer Credit Recovery, Inc., The CBE Group, Inc., Cook Utah of Duchesne, Jim Pitts[4], Jim Connelley[5], Dennis Journigan[6], and Mark Torvinen (collectively "Defendants"). (*Id.* at 2-3, 6).

The complaint alleged the following. (*Id.* at 7). Plaintiff was a Shoshone Indian, ward of the United States, and a member of the Te-Moak Tribe of the Western Shoshone Indians of Nevada. (*Id.*). He was a cattle rancher. (*Id.*). Throughout his life, Plaintiff let his livestock graze on the "historic grazing lands associated with the South Fork Indian Reservation." (*Id.*). During the 1980s, the BLM attempted to get an Indian grazing association to sign a permit to graze livestock, but never approached Plaintiff directly. (*Id.*). Plaintiff never obtained a permit to graze his livestock because the proclamation that established the South Fork Indian Reservation, pursuant to the Indian Reorganization Act, stated that the reservation came "together with all range, and ranges, and range watering rights of every name, nature, kind and description used in connection" with the described boundaries of the reservation. (*Id.*). Plaintiff alleged that he was only exercising his treaty guaranteed vested rights to be a herdsman and to graze his livestock on the ranges. (*Id.*).

The complaint alleged the following. (*Id.*). In the 1990s, the BLM alleged that Plaintiff was trespassing. (*Id.*). On May 24, 2002, Defendants assembled where Plaintiff's livestock were grazing, gathered Plaintiff's livestock, and seized the livestock without a warrant or court order for the seizure. (*Id.* at 7, 14). Defendants then transported Plaintiff's livestock over 300

---

[2] Hankins is currently the Colorado State Director of BLM, but was the BLM Field Manager for the Elko Field Office in 2002. (Mot. to Dismiss (#4) at 3).

[3] Treasury-FMS is an institutional component of the Department of Treasury and manages the Treasury Offset Program which offsets federal payments to those persons and entities who are indebted to a federal agency. (Mot. to Dismiss (#4) at 3).

[4] Pitts is the Sheriff of Elko County. (Mot. to Dismiss (#6) at 1).

[5] Connelley is a former Nevada State Brand Inspector. (Mot. for Summ. J. (#17) at 1).

[6] Journigan is a former Nevada Deputy State Brand Inspector. (Mot. for Summ. J. (#17) at 1).

miles to the BLM facility in Palomino Valley, Nevada. (*Id.* at 14). Defendants never gave Plaintiff notice or an opportunity to dispute the underlying basis of the allegations against him. (*Id.*). Defendants gave Plaintiff a "bill" for the seizure, transport, and alleged trespass fee in excess of $150,000 and told Plaintiff that he had to pay or they would sell his livestock on May 31, 2002. (*Id.*). Defendants sold Plaintiff's livestock on May 31, 2002. (*Id.*).

The complaint alleged five causes of action. (*Id.* at 8-10, 14-15). In the first cause of action, Plaintiff alleged an unwarranted seizure of property in violation of the Fourth Amendment against Robert Abbey, Helen Hankins, Cook Utah of Duchesne, Jim Pitts, Jim Connelley, and Dennis Journigan. (*Id.* at 8). Specifically, Plaintiff alleged that Defendants had violated his rights when they "acted together in concert on May 24, 2002" and seized 132 of Plaintiff's cattle that were grazing on historic grazing lands. (*Id.*).

In the second cause of action, Plaintiff alleged a due process violation under the Fifth and Fourteenth Amendments against Robert Abbey, Helen Hankins, Cook Utah of Duchesne, Jim Pitts, Jim Connelley, and Dennis Journigan. (*Id.* at 9). Specifically, Plaintiff alleged that Defendants violated his due process rights by depriving him of the ability to dispute the underlying basis of the charges alleged against him when they presented him "with a bill for the costs of gathering, transporting, and alleged trespass fees" and told him to pay the amount by May 30, 2002, or his cattle would be sold and the proceeds retained by the BLM. (*Id.*). Plaintiff alleged that Defendants violated his rights and the Nevada Revised Statutes when they transported his livestock without his permission to a location 300 miles away. (*Id.*). Plaintiff alleged that Defendants violated his rights by selling his cattle on May 31, 2002, without his permission or his signature on the Brand Inspection Clearance Certificate in violation of NRS § 565.120. (*Id.*). Plaintiff alleged that Defendants violated his due process rights because they failed to provide him with a pre-deprivation hearing and terminated his ownership rights without having jurisdiction over Plaintiff or his property. (*Id.*).

In the third cause of action, Plaintiff alleged that Robert Abbey, Helen Hankins, Cook Utah of Duchesne, Jim Pitts, Jim Connelley, and Dennis Journigan violated Article VI of the U.S. Constitution which provides that treaties made under the authority of the United States

are the supreme law of land. (*Id.* at 10).  Specifically, Plaintiff alleged that the 1863 Treaty of Ruby Valley, signed by the Western Shoshone Indians and the United States, provided that the President would establish a reservation for the Shoshone to become herdsman and agriculturalists.  (*Id.*).  Pursuant to the Indian Reorganization Act of 1934, the South Fork Western Shoshone Indian Reservation was created in 1941 and provided that "all range, ranges, and range watering rights [were] included as part of the South Fork Reservation." (*Id.*).  Defendants violated Plaintiff's treaty rights when they seized his livestock on May 24, 2002 without a warrant and without having jurisdiction over the ranges on which Plaintiff's livestock were grazing.  (*Id.*).

In the fourth cause of action, Plaintiff alleged that Robert Abbey, Helen Hankins, and Cook Utah of Duchense had violated his civil rights by breaching the trust of the Indian Reorganization Act of 1934.  (*Id.* at 14).  Specifically, Plaintiff alleged that Defendants had failed to perform their trustee responsibilities "as agents of the Trustee of the Plaintiff."  (*Id.*). Plaintiff alleged that Defendants had interfered with his free enjoyment of the historic ranges in his capacity as a Western Shoshone Indian.  (*Id.*).

In the fifth cause of action, Plaintiff alleged that Robert Abbey, Helen Hankins, Cook Utah of Duchesne, Treasury-FMS, Allied Interstate, Inc., Pioneer Credit Recovery, Inc., and The CBE Group, Inc. violated his Fifth and Fourteenth Amendment due process rights by seizing his livestock without a warrant or court order, selling his livestock below market prices, and then attempting to collect a deficiency based on the alleged debt.  (*Id.* at 15).  Under the direction of the BLM, Treasury-FMS attempted to collect over $180,000 from Plaintiff for costs allegedly owed by Plaintiff.  (*Id.*).  Plaintiff was never given an opportunity to defend against the underlying basis of the charges against him or the opportunity to challenge the validity of the alleged debt.  (*Id.*).  Plaintiff informed the Department of Treasury that the debt was not legitimate.  (*Id.*).  The Department of Treasury then assigned the debt to Allied Interstate who attempted to collect the debt.  (*Id.*).  After Plaintiff told Allied Interstate that the debt was not legitimate, Pioneer Credit Recovery attempted to collect the debt.  (*Id.*).  After informing Pioneer Credit Recovery that the debt was not legitimate, The CBE Group attempted to collect

4

the debt. (*Id.*). After Plaintiff told The CBE Group that the debt was not legitimate, the Department of Treasury attempted to collect the debt again. (*Id.*). The Department of Treasury told Plaintiff that it would deduct a portion of his social security payment in order to pay the debt. (*Id.*). On April 1, 2008, the Department of Treasury began deducting 15% of his social security payment without providing him an opportunity for a hearing to challenge the underlying basis of the alleged debt. (*Id.*). Plaintiff continues to suffer monthly damages. (*Id.*).

## LEGAL STANDARD

### I.     Motion to Dismiss Standard

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## II.   Motion for Summary Judgment Standard

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

**I.     Federal Defendants' Motion to Dismiss (#4)**

Robert Abbey, Helen Hankins, and Treasury-FMS (collectively "Federal Defendants") file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Mot. to Dismiss (#4) at 1). With respect to the 42 U.S.C. § 1983 claims against Abbey and Hankins, the Federal Defendants argue that Plaintiff fails to state a claim because Abbey and Hankins did not act under color of state law, but instead acted as federal officials under color of federal law. (*Id.* at 5). They also argue that Plaintiff's § 1983 claims are barred by the two-year statute of limitations because the events giving rise to Plaintiff's claims all occurred in May 2002. (*Id.* at 6). With respect to the *Bivens* claims against Abbey and Hankins, they argue that the two-

7

year statute of limitations bars those claims as well. (*Id.* at 7).  With respect to the § 1983 claim against the Treasury-FMS, Federal Defendants argue that the federal government and its agencies are not persons under the statute. (*Id.* at 8).  With respect to the *Bivens* claims, Federal Defendants argue that a *Bivens* claim may not be brought against the United States or its agencies.  (*Id.*).  Federal Defendants also assert that *res judicata* applies to Plaintiff's argument that Plaintiff is exempt from BLM's range management authority and related grazing restrictions because of his status as a Western Shoshone tribal member. (*Id.* at 11-12, 14).

In response, Plaintiff argues that his claims are not barred by the statute of limitations because Defendants have made reoccurring violations. (Opp'n to Mot. to Dismiss (#23) at 9). Plaintiff alleges that each time one of the collection agencies sent him a notice to pay the alleged debt, the two-year statute of limitations period started anew. (*Id.*). Plaintiff alleges that Treasury-FMS sent him a notice on February 3, 2010, that it was going to continue deducting 15% from his social security payments to repay his debt. (*Id.* at 12).

To determine the statute of limitations for § 1983 claims, federal courts apply the forum state's statute of limitations for personal injury claims. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 786 n.42 (9th Cir. 2000).  In Nevada, the applicable statute of limitations is two years. *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (citing Nev. Rev. Stat. § 11.190(4)(e)).  A state's statute of limitations for personal injury claims also apply to *Bivens* claims. *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991). Federal courts apply the form state's law regarding tolling, including equitable tolling when not inconsistent with federal law. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  However, federal law governs when a claim accrues. *Id.*  "A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Id.*

In Nevada, courts consider the following factors in determining whether equitable tolling should apply in a given case: (1) the diligence of the claimant; (2) the claimant's knowledge of the relevant facts; (3) the claimant's reliance on authoritative statements by the administrative agency that misled the claimant about the nature of the claimant's rights; (4) any deception or false assurances on the part of the employer against whom the claim is made;

(5) the prejudice to the employer that would actually result from delay during the time that the limitations period is tolled; and (6) any other equitable considerations appropriate in the particular case. *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983).

In this case, the Court denies Abbey and Hankins's motion to dismiss. With respect to the first, second, third, and fourth causes of action, the Court finds that the statute of limitations in these causes of action are equitably tolled because Defendants failed to provide Plaintiff with a pre-deprivation hearing before taking his cattle and selling them. Moreover, it appears that Defendants sold Plaintiff's cattle before Plaintiff had time to dispute the seizure and possibly before Plaintiff was aware of any seizure. With respect to the fifth cause of action, the Court finds that there have been reoccurring violations with the attempt to collect the deficiency allegedly owed by Plaintiff and denies the motion to dismiss the fifth cause of action. Accordingly, the Court denies Abbey and Hankins's motion to dismiss (#4). The Court also denies the Treasury-FMS's motion to dismiss (#4).

The Court *sua sponte* grants Plaintiff leave to amend his complaint to assert an "individual aboriginal title" claim to the grazing rights in question. *See United States v. Dann*, 873 F.2d 1189, 1195-1200 (9th Cir. 1989) (holding that individual aboriginal title can be established if there is evidence of actual exclusive occupancy of land or actual grazing by the Individual Indian or his/her lineal ancestors prior to 1934, when the lands were withdrawn by the President pursuant to the 1934 Taylor Grazing Act and Presidential Proclamation).

Additionally, with respect to Treasury-FMS, the only remedy available to Plaintiff against Treasury-FMS is a personal injunction requiring the BLM to withdraw their debt certification to Treasury-FMS and Treasury-FMS's obligation to honor it forthwith. This remedy is based on the BLM's violation of Plaintiff's due process rights in determining a deficiency debt owed and its certification of that debt to Treasury-FMS.

## II.    Jim Pitts's Motion to Dismiss (#6)

Pitts moves to dismiss all claims–the first, second, and third causes of action–against him based on the statute of limitations for his actions taking place in May 2002. (Mot. to Dismiss (#6) at 2). Pitts asserts that the § 1983 claims against him are time-barred by the two-

year statute of limitations period. (*Id.* at 3).

Plaintiff filed a response and Pitts filed a reply. (Opp'n to Mot. to Dismiss (#21); Reply to Mot. to Dismiss (#28)).

The Court denies Pitts's motion to dismiss (#6) based on equitable tolling, as discussed above.

### III. The CBE Group, Inc.'s Motion to Dismiss (#11)

The CBE Group argues that the fifth cause of action should be dismissed against it because the claim is untimely, Plaintiff fails to state a claim against it, and the claim is barred by issue and claim preclusion. (Mot. to Dismiss (#11) at 1-3).

In response, Plaintiff argues that he states a claim and attaches a letter from Treasury-FMS to The CBE Group, dated June 13, 2008, that states that the debt is valid and that collection should continue. (Opp'n to Mot. to Dismiss (#22) at 1-2, 21).

The Court denies The CBE Group's motion to dismiss (#11) the fifth cause of action. The Court finds that there have been reoccurring violations with the attempts to collect the deficiency allegedly owed by Plaintiff. As such, the Court denies the motion to dismiss.

### IV. Jim Connelley & Dennis Journigan's Motion for Summary Judgment (#17)

Connelley and Journigan (collectively "State Defendants") argue that the § 1983 claims alleged against them–the first, second, and third causes of action–are barred by the statute of limitations. (Mot. for Summ. J. (#17) at 6). State Defendants provide exhibits demonstrating that their only actions in this case took place on May 24, 2002, when they issued a brand inspection clearance certificate. (*Id.* at 4; Brand Inspection Clearance Certificate (#17-4) at 2). They also argue that they are entitled to qualified immunity. (Mot. for Summ. J. (#17) at 7).

Plaintiff filed a response.[7] (Opp'n to Mot. to Dismiss (#31)).

The Court denies Connelley and Journigan's motion for summary judgment (#17) based on equitable tolling, as discussed above.

---

[7] Plaintiff filed for an extension of time to file his response. (Mot. to Extend Time (#19)). The Court grants this motion.

10

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Robert Abbey, Helen Hankins, and the Department of the Treasury-Financial Management Services' Motion to Dismiss (#4) is DENIED.

IT IS FURTHER ORDERED that Jim Pitts's Motion to Dismiss (#6) is DENIED.

IT IS FURTHER ORDERED that The CBE Group, Inc.'s Motion to Dismiss (#11) is DENIED.

IT IS FURTHER ORDERED that Jim Connelley and Dennis Journigan's Motion for Summary Judgment (#17) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for an Enlargement of Time (#19) is GRANTED.

DATED: This 13th day of June, 2012.

_____
United States District Judge