DANIEL G. BOGDEN
United States Attorney

GREG ADDINGTON
Assistant United States Attorney
Nevada Bar # 6875
100 West Liberty Street, Suite 600
Reno, Nevada 89501
(775) 784-5438
(775) 784-5181-facsimile

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RAYMOND D. YOWELL,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT ABBEY,<br>HELEN HANKINS,<br>DEPARTMENT OF THE TREASURY-<br>FINANCIAL MANAGEMENT SERVICES,<br>THE ALLIED INTERSTATE, INC.,<br>PIONEER CREDIT RECOVERY, INC.,<br>THE CBE INC.,<br>JIM CONNOLY,<br>DENNIS JUROGIAN,<br>JIM PITTS,<br>MARK TORVINEN, and<br>COOK OF UTAH,<br><br>Defendants. | 3:11-cv-518-RCJ-VPC<br><br><br><br>FEDERAL DEFENDANTS' RESPONSE<br>TO PLAINTIFF'S "MOTION FOR<br>PERSONAL INJUNCTIVE RELIEF" (#43) |

Come now the defendants Robert Abbey, Helen Hankins, and the Department of the Treasury-Financial Management Services, through their undersigned counsel, and respond as follows to plaintiff's motion (#43) for "personal injunctive relief." As discussed below, the subject motion - which these defendants construe as a motion for preliminary injunction - should be denied. Plaintiff Yowell provides no evidentiary support for his motion for injunctive relief and he likewise provides no points and authorities to support the relief he requests. By whatever

standard the motion is evaluated, it is plain that the motion lacks any basis in law or fact and, accordingly, the motion should be denied.

The subject motion consists of 16 lines of text. No legal analysis is provided, no statutes or regulations are referenced, and no cases are cited or discussed. Instead, Yowell simply asserts that he no longer wants his Social Security benefits offset (partially) to satisfy the debt Yowell owes to the United States. Yowell requests an injunction directing BLM to withdraw its "debt certification" to the Department of the Treasury (thereby preventing future offsets) and an additional injunction directing Treasury to return funds to Yowell which previously have been offset from Yowell's Social Security benefits for the same purpose. Yowell also wants "compound interest" to be paid on the amounts which have been offset. See Motion (#43),p.1.

Yowell's motion should be denied. Neither defendant Abbey nor defendant Hankins - who presumably are sued herein under some "Bivens" theory of recovery - has any means or any authority to perform any of the functions which Yowell seeks to enjoin. Federal defendant Robert Abbey is the *former* (now retired) National Director of the Bureau of Land Management (BLM).[1] Federal defendant Helen Hankins is the *former* BLM Field Manager for the Elko Field Office.[2] This Court already has (correctly) observed that Yowell had named the "wrong defendant in the Treasury" (see Transcript of Hearing, p.3). In short, there is nothing these federal defendants can do to effect the injunctive relief which Yowell requests. Accordingly, Yowell's motion (#43) for "personal injunctive relief" should be denied.

---

[1] Mr. Abbey retired from federal service in May 2012. At the time of his retirement, Mr. Abbey was the National Director of BLM. As a retired federal official, Mr. Abbey has no means and no authority to provide any relief to Yowell regarding Yowell's claim to grazing rights on BLM-managed lands in Nevada or Yowell's claims regarding BLM's debt collection activities.

[2] Ms. Hankins currently is the Colorado State Director of BLM. As a BLM official with no role or responsibility regarding BLM functions in Nevada, Ms. Hankins has no means and no authority to grant any relief to Yowell regarding Yowell's claim to grazing rights in BLM-managed lands in Nevada or Yowell's claims regarding BLM's debt collection activities.

I. Introduction

Yowell filed this pro se action in July 2011 against the three "federal" defendants named in the caption of the complaint as well as multiple private party defendants and State of Nevada officials. Federal defendant Robert Abbey is the *former* (now retired) National Director of the Bureau of Land Management (BLM). Federal defendant Helen Hankins is the *former* BLM Field Manager for the Elko Field Office. Federal defendant Department of the Treasury is a federal agency.

On February 21, 2012, this Court conducted a hearing on multiple dispositive motions filed by the various defendants. At that hearing, this Court acknowledged that Yowell had named the "wrong defendant in the Treasury" (see Transcript of Hearing, p.3), acknowledged that the Court was "going to have to dismiss that claim" (referencing the claims concerning the 2002 impoundment of Yowell's cattle) because of prior rulings in prior cases brought by Yowell (see Transcript of Hearing, p.14), plainly stated that the Court was "going to dismiss a substantial part of this lawsuit" (see Transcript of Hearing, p.18) but then failed to do so despite the acknowledged presence of claims which must be dismissed, and expressed its intention to preserve some aspect of this lawsuit "if there's any way I can find" to do so (see Transcript of Hearing, pp.2, 18).

By subsequent Order (#37) and apparently recognizing that the original complaint could not survive scrutiny (as reflected in the Court's commentary during the February 21 hearing), the Court granted Yowell leave to amend his complaint. Yowell filed an amended complaint (#42) which repeated the deficiencies identified by the Court. Yowell also, on the same day, filed a motion (#41) for leave to file a second amended complaint - the proposed second amended complaint likewise repeating the same deficiencies which the Court identified. Yowell's motion (#41) for leave to file a second amended complaint is opposed and remains pending. The Court also urged Yowell to include a claim of "individual aboriginal title" with respect to the grazing

rights claimed by Yowell (see Order (#37)).[3]

The current motion (#43) seeks an injunction "requiring the BLM to withdraw their (sic) debt certification to the Treasury..." and a further injunction directing Treasury "to immediately return the funds previously deducted from his Social Security payments..." See Motion (#43), p.1.

II. Argument

A.  Yowell Provides No Points and Authorities to Support His Motion

Local Rule 7-2(d) provides as follows: "The failure of a moving party to file points and authorities in support of the motion constitute a consent to the denial of the motion." Yowell acknowledges that he has filed no such points and authorities. See Motion (#43), p.1 ("A brief in support of this motion will not be filed as the Court has already sufficiently stated the background and basis of the deduction of funds from the plaintiff's Social Security payments in the Order of June 13, 2012."). Yowell's reference to this Court's Order (#37) of June 13 is unavailing and does not serve as a proxy for the required points and authorities.

B.  The Named Defendants Can Not Effect the Requested Injunction

Yowell's motion seeks an injunction directing BLM to withdraw its debt certification to Treasury so that the "Treasury Offset Program" will no longer generate a partial offset of Yowell's

---

[3] In its Order (#37), the Court addressed only one of the multiple alternative grounds for dismissal of the claims against these defendants; namely, the obvious expiration of the applicable limitations period for bringing such claims. The Court fashioned a wholly fictional narrative to support a spurious "tolling" of the two-year limitations period - based on Yowell having not been given "notice" of the 2002 cattle impoundment by BLM even though Yowell himself acknowledges that he received the very notice which is central to the Court's "tolling" analysis and even though Yowell invoked his administrative remedies in response to his receipt of the same notice. A motion for reconsideration will be filed in due course. Nonetheless, multiple alternative grounds for dismissal of these claims were advanced (see #4) but have not been adjudicated.

The "individual aboriginal title" claim urged by the Court can not be advanced against any of these defendants. See fn. 1-2, supra.

Social Security benefits. However, BLM is not a party to this action and never has been a party to this action. Likewise, the United States is not a party to this action and never has been a party to this action. Yowell's claims are against a retired BLM official (Mr. Abbey), a BLM official who has no role in BLM's administrative activities in Nevada (Ms. Hankins), and the Department of the Treasury. Yowell seeks to recover thirty million dollars from these defendants (and others) based on alleged violations of his Constitutional rights.

This Court already has acknowledged that Yowell has named the "wrong defendant in the Treasury" (see Transcript of Hearing, p.3). It is plain that neither Mr. Abbey nor Ms. Hankins can, in any manner, effect the injunctive relief sought by Yowell. Quite simply, the relief sought by Yowell in the current motion is an injunction directed against an entity which is not before the Court.

Although Yowell seeks an injunction directing Treasury to return the funds previously deducted from his Social Security payments and Treasury plainly is a defendant named by Yowell (albeit a defendant which the Court has acknowledged as the "wrong defendant"), Yowell's motion still must be denied. Yowell misapprehends Treasury's role in the "Treasury Offset Program."

Treasury-FMS operates a centralized debt collection program known as the "Treasury Offset Program" (TOP). The Debt Collection Improvement Act of 1996, Pub.L.No. 104-134, requires federal agencies to refer to Treasury eligible delinquent non-tax debts owed to the United States for general debt collection services. See 31 USC § 3711(g)(1). When an agency refers a debt to Treasury as required by 31 USC § 3711(g)(1), the agency certifies to Treasury that the debt is valid, delinquent, and legally enforceable in the amount stated. See 31 CFR § 285.12(i). Federal agencies and states use the TOP, a centralized offset program, to collect delinquent non-tax debts in accordance with 31 USC § 3716 (administrative offset) and other applicable laws. When an agency submits and certifies a debt to Treasury's cross-servicing program, Treasury-FMS will process the debt through the TOP for collection on the agency's behalf, as required by 31 USC

§ 3716(c)(6). See 31 CFR § 285.12(g). Treasury does not make any determination as to whether or not the debt is valid or whether a federal payment should be offset for collection of a federal debt. Under 31 USC §§ 3711(g)(1) and 3716(c)(6), federal creditor agencies - in this case, BLM - are required to refer delinquent debts to Treasury for collection and offset purposes. The creditor agency determines when the debt is eligible for referral and controls whether and when to utilize the TOP to collect a delinquent debt. See, 31 USC § 3716(c)(1)(A) (requiring disbursing officials to offset non-tax payments by amounts equal to a debt which a creditor agency has certified to the Secretary of the Treasury); see, also, 26 USC § 6402(d)(1) and 31 USC § 3720A(c) (requiring the Secretary of the Treasury to reduce a tax refund by the amount of a debt submitted to Treasury for collection).

Section 3716(c(3), title 31, specifically provides that Social Security payments "shall be subject to offset under this section." However, certain federal benefits, including Social Security benefits, are exempt from offset if the amount of the benefits is less than $9,000 over a 12-month period. See 31 USC § 3716(c)(3)(A)(ii). Accordingly, Yowell's Social Security payments are partially offset under the TOP - consistent with federal law.

In seeking an injunction against Treasury, Yowell advances a claim against a defendant which the Court already has acknowledged to be the "wrong defendant" and which has no discretion with regard to the statutory collection mechanism which Treasury administers.

### C. Yowell's Motion Fails Under a Traditional Standard for Preliminary Injunction

In addition to being directed against the wrong parties and being unsupported by any legal analysis, Yowell's motion fails under any standard for assessing a request for preliminary injunctive relief.

In considering whether to grant an application for a preliminary injunction, the Court must examine four factors: (1) whether Plaintiff is likely to succeed on the merits; (2) whether Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of

equities tips in Plaintiff's favor; and (4) whether the public interest would be served by issuance of the temporary restraining order. See Winter v. Natural Res. Def. Council, 555 U.S. 7 (2008) (addressing the factors in granting preliminary injunctions). In this circuit, the standard for granting a preliminary injunction and the standard for granting a temporary restraining order are the same. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical."); see also Winch v. Lifepoint RC. Inc., No. 3:10-CV-00061-LRH-RAM, 2010 WL 428918, at *1 (D. Nev. Feb 1, 2010) ("The same legal standard applies to temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65.").

In light of the Supreme Court's decision in Winter, courts must consider all four factors governing preliminary relief, see Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1019 (9th Cir. 2009) (finding that the district court erred in granting a preliminary injunction because it failed to assess the non-merit factors – irreparable harm, balancing of equities and the public interest – under the Winter standard), and may not issue an injunction based on the mere possibility that there will be irreparable injury, see American Trucking Ass'n v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (holding that plaintiff must show that irreparable injury is likely). In the Ninth Circuit, an injunction may issue if there are "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). Under eitehr test, a plaintiff must still demonstrate that it is *likely* to suffer irreparable injury absent an injunction (not merely that injury is "possible") and that such an injunction would be in the public interest. The Cloud Foundation v. U.S. Bureau of Land Management, 2011 WL 2883348 (citing Contrell, 632 F3d at 1131-1132).

1. <u>Yowell Has No Likelihood of Success on the Merits.</u>

Yowell seeks to recover thirty million dollars in damages on account of alleged violations of his Constitutional rights. His claim originates in a 2002 impoundment of cattle which this Court already has acknowledged was the subject of prior final rulings by this Court, rulings adverse to Yowell. Yowell brings this action against a retired BLM official (Mr. Abbey), a BLM official who currently has no role in BLM's administrative functions in Nevada (Ms. Hankins), and the Department of the Treasury. The stated jurisdictional basis for Yowell's claims is 42 USC § 1983 - which does not apply to federal officials or federal agencies. Yowell might also be relying on some "Bivens" theory of recovery - which is not available against federal agencies. As currently structured by Yowell, there is no conceivable theory of recovery which can yield a judgment compatible with the injunctive relief sought by Yowell - even with the overly-indulgent regard which the Court might have for Yowell's effort. At a minimum, Yowell must state a viable claim for relief against an identified defendant and a jurisdictional basis for such relief. To date, Yowell has failed to overcome this basic obstacle.

2. <u>Yowell Has Failed to Demonstrate Irreparable Harm</u>

A specific finding of irreparable to the movant is one of the most important elements for the court to consider in deciding whether preliminary injunctive relief is warranted. See <u>Monsanto v. Geertson Seed Farms</u>, 130 S.Ct. 2743, 2760 (2010)(an injunction should only issue if it is "needed to guard against any present or imminent risk of likely irreparable harm."). "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." <u>Oakland Tribune v. Chronicle Publishing Company</u>, 762 F.2d 1374, 1376 (9th Cir. 1985). "The moving party must also demonstrate at least 'a significant threat of irreparable injury.'" <u>Cotter v. Desert Place, Inc.</u>, 880 F.2d 1142, 1144 (9th Cir. 1989), <u>quoting</u> <u>Arcamuzi v. Continental Air Lines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1987). "[T]he moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury."

Big Country Foods v. Board of Education, 868 F.2d 1085, 1088 (9th Cir. 1989); Hoopa Valley Tribe v. Christie, 805 F.2d 874 (9th Cir. 1986) (while finding that the "balance of hardship tips sharply in [plaintiff's] favor" injunctive relief denied because irreparable injury was not demonstrated and low likelihood of success on merits.)

The "harm" which Yowell seeks to enjoin is the partial offset of his Social Security benefits in order to satisfy Yowell's debt to the United States. Yowell does not state what amounts are being offset, does not state what other sources of income he has, does not state whether the offset imposes any hardship whatsoever on him, and does not state what hardship or harm will be avoided through the requested preliminary injunction. Yowell only states that he wants the offset to stop - a desire which likely is shared by every debtor whose federal benefit payments are being offset through the TOP.

The Ninth Circuit has long held that monetary loss compensable in a damage claim does not constitute irreparable injury warranting injunctive relief: "such monetary injury is not normally considered irreparable." Los Angeles Memorial Coliseum Com'n, 634 F.2d at 1202.

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1974), quoted in Los Angeles Memorial Coliseum Commission, 634 F.2d at 1202.

In Lydo Enterprises v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984), wherein a book store claimed that it would suffer monetary loss through enforcement of a zoning regulation, the court noted that "purely monetary injuries are not normally considered irreparable." In Goldie's Bookstore, 739 F.2d at 471, the court again affirmed that "[m]ere financial injury, however, will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." Similarly, in Cotter, 880 F.2d at 1145, the Ninth Circuit rejected a challenge by casino dealers to a new tip sharing policy and the court observed that "[e]ach of these potential injuries is purely monetary .... Injuries compensable in monetary damages are not normally considered

9

irreparable." quoting Los Angeles Memorial Coliseum Com'n, 634 F.2d at 1202. See also Church of Scientology v. United States, 920 F.2d 1481, 1489 (9th Cir. 1990), cert. denied, 500 U.S. 952 (1991) ("Mere allegations of financial hardship are insufficient to support a finding of irreparable harm.")

Yowell has not alleged or demonstrated the likelihood of irreparable harm if an injunction is not issued. Accordingly, the motion should be denied.

3. The Balance of Hardships and the Public Interest Do Not Support an Injunction

Where, as here, a plaintiff is seeking to enjoin government activity, thus affecting matters of public interest, the Ninth Circuit presumes that injunctive relief is not an appropriate remedy.

This view has its genesis in several Supreme Court decisions. In Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982), the Supreme Court held that an injunction, even if otherwise permissible because of irreparable injury visited upon a plaintiff, may still be denied if imposition of the injunction would not serve the public interest:

> In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.... Thus, the Court has noted that "[t]he award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff," and that, "where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff...." The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.

(Emphasis added.)

The same point was reiterated in Amoco Production Co. Gambell, 480 U.S. 531, 542 (1987).

Prior Supreme court decisions have made the same observation. In Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975), the court noted that when injunctive relief was sought against a public entity, the weighing process was implicitly one supporting the denial of an injunction even

10

if the standard tests were met, rather than one permitting the granting of an injunction in the absence of a satisfaction of the tests. "Although only temporary, the injunction does prohibit state and local enforcement activities against the federal plaintiff pending final resolution of his case in the federal court." 422 U.S. at 931. And in Sampson v. Murray, 415 U.S. 61, 83 (1974) the court, in affirming the denial of injunctive relief against the federal government, expressed palpable concern as to "the obviously disruptive effect which the grant of the temporary relief ... [would] have on the administrative process" and "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" Id. quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 896 (1961).

These views have been adopted by the Ninth Circuit. The Ninth Circuit has held that a special test applies to injunction requests against government entities:

> [W]hen the public interest is involved, it must be a necessary factor in the district court's considerations of whether to grant preliminary injunctive relief. Thus, under the "traditional test" typically used in cases involving the public interest, the district court should consider (1) the likelihood that the moving party will prevail on the merits, (2) whether the balance of irreparable harm favors the plaintiff, and (3) whether the public interest favors the moving party.

Caribbean Marine Services Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). In such cases, the Ninth Circuit held, "the district court must always consider whether the public interest would be advanced or impaired by issuance of an injunction in any action in which the public interest is affected." 844 F.2d at 677.[4]

The public interest consideration from the opposition viewpoint was also discussed in Lydo Enterprises v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984). There, the court reversed a district court's injunction against enforcement of a zoning ordinance, noting that the injunction caused palpable harm by preventing the defendant city from enforcing its ordinance.

---

[4] See also Northern Cheyenne Tribe v. Hodel, 851 F.2d 1152, 1157 (9th Cir. 1988) ("In deciding whether to issue an injunction, in which public interest is affected, a district court must expressly consider the public interest on the record. . . . The failure to do so constitutes an abuse of discretion.").

11

The interest of a government enforcing its ordinances was considered an overriding factor.

And in <u>Committee of Central American Refugees v. INS</u>, 795 F.2d 1434 (9th Cir. 1986), the court criticized the notion of interfering, at the preliminary injunction stage, into discretionary ongoing government functions, there an INS decision as to where to incarcerate deportable aliens. Judges, the Ninth Circuit noted, should be "guided by the prudential barriers to judicial review of executive decisions. . . ." 795 F.2d at 1440.

Here, the public interest weighs heavily against the requested injunction. Yowell seeks a suspension of a statutory collection mechanism. He also seeks the return of funds which have been collected in the past. The time period in which Yowell's debt to the United States can be collected through administrative means will soon expire and there is no likelihood that monies returned or which go uncollected now will ever be recovered from Yowell once his current claims fail. If Yowell prevails on the merits of his claims and manages to obtain a final judgment requiring payment of money to him, there is no reason to suppose that the judgment will not be satisfied. Yowell's current motion is nothing more than an effort to collect on a judgment which has not yet been entered. That effort must yield to the preferred sequence of securing a judgment first and then proceeding with collection on the judgment.

4. <u>Yowell's Motion Seeks to Alter the Status Quo</u>

Yowell does not seek to preserve the status quo but rather seeks to alter the status quo by suspending the operation of the TOP and returning funds which already have been collected through the TOP.

"[I]n cases ... in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." <u>Martin v. International Olympic Committee</u>, 740 F.2d 670, 675 (9th Cir. 1984). An injunction, particularly against the government, can be issued, if at all, only to maintain the status quo, not to enforce new policy or conduct upon the government.

12

The Ninth Circuit has explained that the purpose of a preliminary injunction is to preserve the status quo, rather than to affirmatively force new action upon the defendant. "[I]n cases ... in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." Martin v. International Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984). The court has observed that:

> A prohibitory injunction preserves the status quo, Johnson v. Kay, 860 F.2d 529, 541 (2nd Cir. 1988). A mandatory injunction "'goes well beyond simply maintaining the status quo pendente lite [and], is particularly disfavored.'" Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1979), quoting Martinez v. Matthews, 544 F.2d 1233, 1243 (5th Cir. 1976). When a mandatory preliminary injunction is requested, the district court should deny such relief "'unless the facts and law clearly favor the moving party.'" Id.

Stanley v. U.S.C., 13 F.3d 1313, 1321 (9th Cir. 1994) (emphasis added) (court affirms denial of injunction seeking reinstatement of former employee at an increased salary).

This view has been frequently reiterated in Ninth Circuit decisions. "In cases . . . in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." Martin v. International Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984). "Such 'mandatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." Dahl v. HEM Pharmaeuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993). See also, Committee of Central American Refugees v. INS, 795 F.2d 1434, 1441 (9th Cir. 1986); Zepeda v. United States INS, 753 F.2d 719, 728 n.1 (9th Cir. 1983); Sierra-On Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984); Los Angeles Memorial Coliseum Commission, 634 F.2d 1197, 1200 (9th Cir. 1980).

III. Conclusion

Yowell's motion for preliminary injunctive relief suffers from multiple deficiencies which cannot be overcome. No amount of inventiveness or creativity will provide the requisite alchemy

1  to transform Yowell's stated claims into claims cognizable under any theory of recovery.
2  Accordingly, the motion (#43) should be denied.

3                                           Respectfully submitted,

4                                           DANIEL G. BOGDEN
                                            United States Attorney
5
                                            /s/ Greg Addington
6                                           GREG ADDINGTON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFF'S "MOTION FOR PERSONAL INJUNCTIVE RELIEF" (#43) was made through the Court's electronic filing and notice system or, as appropriate, by sending a copy of same by first class mail, addressed to the following addressee, on this 6th day of July, 2012.

Raymond D. Yowell
HC 30 Box 272
Spring Creek, NV 89815

Douglas Rands, Esq.
9498 Double R Blvd, Suite A
Reno, NV 89521

Bryan Stockton, Esq.
Deputy Attorney General-State of Nevada
100 North Carson Street
Carson City, NV 89701

Joseph Hardy, Esq.
Michael Davidson, Esq.
3770 Howard Hughes Parkway, Suite 100
Las Vegas, NV 89169

                                          /s/ Greg Addington
                                          GREG ADDINGTON